UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                         Plaintiff,                              Case No. 13-cr-20621

v.                                            Honorable Thomas L. Ludington

CARTER WHITE RAE,

                         Defendant.

_____/

**ORDER DENYING DEFENDANT RAE'S MOTION TO DISMISS COUNTS AND
MOTION FOR GOOD FAITH INSTRUCTION**

Title 26, § 7201 of the United States Code provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof" shall be guilty of a felony. *See Cheek v. United States*, 498 U.S. 192, 193 (1991). Defendant Carter White Rae's initial motion contends that this case turns on the meaning of the word "person" as used in § 7201.

**I.**

On September 26, 2013, the grand jury returned a three-count indictment charging Carter White Rae with crimes related to avoiding his income tax obligations. *See* Indictment 1–3, ECF No. 3. Specifically, Count 1 of the Indictment charges Rae with "willfully attempt[ing] to evade and defeat the payment of the income taxes due and owing by him to the United States." *Id*. at 1. Count 2 charges Rae with—for the purpose of executing "a scheme and artifice to defraud . . . the United States and the State of Michigan of payment of his income tax obligations"— knowingly causing federal and Michigan income tax returns to be delivered by mail. *Id*. at 2. And Count 3 charges Rae with knowingly and willfully falsifying the records of his dental

practice so that his wife received regular payments "falsely characterized as 'payroll'" when "the true nature of those payments [were] material to an accurate assessment of Carter White Rae's income." *Id*. at 3.

On April 4, 2014, Rae filed a motion to dismiss Counts 1 and 2 of the Indictment "because the tax code does not impose upon him a duty to pay[,]" Def.'s Mot. Dismiss 1, ECF No. 30, and a motion for a good faith jury instruction because his "theory of defense at trial . . . will be that he had a good faith belief that the tax laws did not impose a duty on him[,]" Def.'s Mot. Instr. 1, ECF No. 29.  Both motions will be denied.

## II.

Rae believes that Counts 1 and 2 of the Indictment should be dismissed because he was under no obligation to pay income taxes.  Count 1 charges Rae with tax evasion under 26 U.S.C. § 7201.  Count 2 charges Rae with mail fraud under 18 U.S.C. § 1341.  Each charge will be addressed in turn.

### A.

Although § 7201 makes it unlawful for "[a]ny person" to willfully evade or defeat any tax imposed by the Tax Code, Rae argues that he is not a "person" as envisioned by § 7201 and thus cannot be held criminally liable under that section.  He is mistaken.

It is true that, as Rae emphasizes, there are multiple definitions of "person" throughout the Tax Code.  For example, Chapter 75 governs "Crimes, Other Offenses, and Forfeitures"— including tax evasion, which comprises Count 1 of the Indictment.  *See* Indictment 1 (charging Rae under 26 U.S.C. § 7201).  And "as used in [Chapter 75]," and therefore § 7201, the term "person" includes "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in

- 2 -

respect of which the violation occurs."   26 U.S.C. § 7343.  So, even though it is unlawful for "[a]ny person" to willfully evade paying income taxes under § 7201, Rae concludes that he—as just a mere individual citizen—is not a "person" under the applicable definition set forth in § 7343, and thus Count 1 should be dismissed.

But elsewhere in the Tax Code there is another definition of "person" that, by its terms, is meant to be generally applicable throughout the Code (including Chapter 75):

> When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
>
> (1) Person.—The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company, or corporation.

26 U.S.C. § 7701(a).  Under this plain language, then, an individual such as Rae qualifies as a "person" under § 7201 (pursuant to the definition provided by § 7701) unless the definition established in § 7343 is deemed a "distinct[] express[ion]" otherwise or it would be "manifestly incompatible with the intent" of §§ 7343 and 7201 to treat an individual as a "person."  *See United States v. Hendrickson*, 664 F. Supp. 2d 793, 814 (E.D. Mich. 2009).

In *Hendrickson*, this Court explained that "[n]othing in § 7343 can be construed as a 'distinct[] express[ion]' of an intent to override or supplant the § 7701(a)(1) definition of a 'person.'"  *Id*. at 814–15.  The Court explained that, to the contrary,

> § 7343 reads quite naturally as a supplement to or clarification of this latter definition: § 7701(a)(1) provides that the term "person" "mean[s] and include[s] an individual, a trust, estate, partnership, association, company or corporation," and § 7343 then builds upon this definition by specifying that it "includes" certain individuals who act on behalf of a corporation or partnership—*i.e.*, "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

*Id*. at 815.  Accordingly, although the definition of "person" set forth by § 7343 applied to 26 U.S.C. § 7206(1) (the portion of Chapter 75 involved there), the Court in *Hendrickson* concluded

- 3 -

that the definition of "person" provided by § 7701(a)(1) also applied, and therefore "person" as used in § 7206(1) included individuals. *Id*. at 816. Here, the Court once again confirms that "it is not only far more natural, but also better comports with § 7701(c), to construe § 7343 as building upon, and not overriding, the more general and broadly applicable definition of 'person' found at § 7701(a)(1)." *Id*. at 815.

Moreover, it would not be "manifestly incompatible with the intent" of §§ 7343 and 7201 to treat an individual as a "person." In at least three unpublished opinions, the Sixth Circuit has rejected as meritless the contention that an ordinary individual is not a "person" within the meaning of § 7343. *See United States v. Maggi*, No. 98–5570, 1999 WL 96651, at *2 (6th Cir. Feb. 5, 1999); *United States v. Napier*, No. 90–1297, 1991 WL 22022, at *1 (6th Cir. Feb. 22, 1991); *United States v. Boling*, No. 87–5051, 1988 WL 3477, at *2 (6th Cir. Jan. 19, 1988). In *Maggi*, for example, the defendant challenged his conviction under § 7201 on the ground that "Congress made [§ 7201] ONLY applicable to the 'person' defined in 26 U.S.C. Sec. 7343"— the same argument Rae raises. *See* Def.'s Mot. Dismiss ("for purposes of crimes under the tax code, [§ 7343] does not define the term 'person' as applying to individuals, but to officers or employees of corporations and partnerships."). The Sixth Circuit held that the defendant was in fact a "person" as the term is defined in the Tax Code, emphasizing the title-wide definition at § 7701(a)(1) and explaining that "[t]he term 'person' as used in the tax code has been consistently, and plainly, defined as any individual." 1999 WL 96651, at *2. Likewise, in *Boling*, the Sixth Circuit rejected the defendant's argument that an individual "is not a 'person' as defined in 26 U.S.C. § 7343" as "patently frivolous." 1988 WL 3477, at *2.

Notably, other circuits have reached the same conclusion. In *United States v. Rice*, 659 F.2d 524, 528 (5th Cir. 1981), the defendant challenged his conviction for willfully failing to file

an income tax return, arguing, among other things, that he was not a "person" who was obligated to file an income tax return under the federal tax laws. The Fifth Circuit rejected this argument as a "nigh frivolous non-sequitur," explaining that § 7343 "obviously" was "not intended to exclude individual[s] or to limit the ordinary meaning of the term 'person' so as to exclude individuals or 'natural persons,' in counsel's phrase, from their responsibility to comply with the tax laws." *Rice*, 659 F.2d at 528. Similarly, in *United States v. Latham*, 754 F.2d 747, 749–50 (7th Cir. 1985), the defendant appealed his conviction for filing false W–4 statements, arguing that the jury instructions at trial were improper because they did not reflect his interpretation of the term "person" as defined under § 7343. The Seventh Circuit rejected this contention as "inane," observing that the word "include" as used in § 7343 "is a term of enlargement not of limitation," and that "the reference to certain entities or categories is not intended to exclude all others." *Id.* at 750; *see also United States v. Karlin*, 785 F.2d 90, 91 (3d Cir. 1986); *United States v. Condo*, 741 F.2d 238, 239 (9th Cir. 1984) (finding that "[t]he word 'includes' [in § 7343] expands, not limits, the definition of 'persons'" to encompass the specific employees, officers, and partnership members listed in this provision).

Rae cites no legal authority in support of his position that "person"—as used in § 7201—does not include individuals. Accordingly, in light of the plain language of the Tax Code dictating that an individual is a "person," and in light of the absence of authority for a contrary conclusion, Rae's suggestion that Count 1 should be dismissed is rejected.

## B.

Rae also argues that Count 2 should be dismissed, but he does not offer any additional explanation other than what is outlined above—that he is not a "person" as envisioned by § 7201. It may be that Rae believes this argument defeats Count 2 because the charge alleges that

- 5 -

he committed mail fraud "having devised a scheme and artifice to defraud, that is to deprive the United States and the State of Michigan of payment of his income tax obligations . . . ." Indictment 2. Logically, if Rae is not a "person" under § 7201, then there could not have been a scheme to defraud, and therefore the assertion that he fraudulently used the mail to effectuate a scheme to defraud necessarily fails.

Of course, as explained above, Rae's argument that he is not a "person" under § 7201 is without merit. So Count 2 will not be dismissed on that ground. Moreover, 18 U.S.C. § 1341, the statute covering "Frauds and swindles," does not use the word "person," but instead the word "whoever." *See* § 1341 ("Whoever, having devised or intending to devise any scheme or artifice to defraud . . . ."). Based on the analysis above, and the absence of any alternative argument, Rae's contention that Count 2 should be dismissed is also without merit. His motion to dismiss is denied.

### III.

Rae also filed a motion seeking a jury instruction that his good faith interpretation of the tax code is a defense to the charges. Rae contends in his motion that his "theory of defense at trial to the charges of tax evasion and mail fraud will be that he had a good faith belief that the tax laws did not impose a duty on him." Def.'s Mot. Instr. 1. During the hearing held on August 21, 2014 Rae contended that he is also entitled to a good faith jury instruction as to Count 3. He indicates that "[u]nder *Cheek v. United States*, 498 U.S. 192 (1991), a good faith belief that the tax laws did not impose a duty . . . is a defense to the element of willfulness, and the belief does not have to be objectively reasonable in order for the defense to be presented to the jury." Def.'s Mot. Instr. 1. The government agrees that "events at trial might warrant giving the jury an appropriate 'good faith' instruction. However, the potential availability of a 'good faith'

- 6 -

instruction on the tax charge is subject to limitations[.]"  Pl.'s Resp. Instr. 1–2, ECF No. 32. Rae contends such an instruction is warranted for all three counts charged. Because the law conditions the availability of good faith instructions differently for each count of the indictment, they will be considered separately.

**A.**

The first count charged against Rae is tax evasion under 26 U.S.C. § 7201. Rae requests both a good faith interpretation instruction and good faith reliance on a tax adviser instruction with respect to this count.

**1.**

The Sixth Circuit has held that "where a trial judge 'adequately instruct[s] the jury on willfulness' in a case concerning whether the defendant[] had filed fraudulent tax returns, "[a]n additional instruction on good faith [is] unnecessary." *United States v. Damra*, 621 F.3d 474, 502 (6th Cir. 2010) (quoting *United States v. Pomponio*, 429 U.S. 10, 13 (1976)). Instructing the jury on willfulness with the language approved by the Supreme Court in *Pomponio* is sufficient to satisfy the request for a good faith instruction. *Id*. ("Willfulness the [Supreme] Court explained, 'in this context simply means a voluntary, intentional violation of a known legal duty.'") "[A] jury's conclusion that a defendant acted "willfully" in this manner "would necessarily negate any possibility" that the defendant acted in good faith." *Id*. (quoting *United States v. Tarwater*, 308 F.3d 494, 510 (6th Cir. 2002)). Rae will not receive a good faith instruction on this count because the jury will receive an appropriate instruction on willfulness.

**2.**

At the hearing, Rae also indicated his intent to request a good faith instruction based upon the advice he received from a bookkeeper or accountant. The most instructive case analyzing

good faith reliance instructions out of the Sixth Circuit is *United States v. Duncan*. 850 F.2d 1104 (6th Cir. 1988). There, Duncan sought a good faith reliance on his accountant instruction in connection with his charge under 26 U.S.C. § 7206. The district court denied his request. The Sixth Circuit held that the proper elements of the defense are "(1) full disclosure of all pertinent facts, and (2) good faith reliance on the accountant's advice." *Id*. at 1116. The court also reiterated that "an instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation." *Id*. (internal quotation marks omitted). Further, a good faith reliance instruction need not be given "whenever a defendant asserts that he followed a preparer's advice in good faith, if there is overwhelming evidence to the contrary." *Id*.

*Duncan* concerned a series of transactions the government contended were intended to transfer control of certain Tennessee banking operations to "the so-called Butcher banking empire in East Tennessee in the early 1980's." *Id*. at 1105. C.H. Butcher, the man behind the transactions, sought to acquire control of the Knox Federal Savings & Loan, over which Duncan's family exercised partial control. *Id*. at 1106. Part of the agreement between Butcher, Duncan, and Downing, was that Butcher would gain seats on the Knox Federal S&L's board in exchange for forgiving loans made to Duncan by one of the banks Butcher controlled. *Id*. Using Downing, an accountant, as middleman, Butcher made loans through his bank to a separate corporation with which Downing and Butcher were involved. *Id*. at 1107. The plan, the government argued, was for these funds to be credited to Duncan against a capital asset so that they could be classified, for tax purposes, as a capital gains transaction. *Id*. at 1106.

The capital asset selected to implement the plan was a right of first refusal to buy an interest in a local motel. *Id*. Duncan acquired this right for nominal consideration and he then assigned the right to Downing. *Id*. at 1106-07. The individual who sold Duncan the right testified

that the transaction was back-dated to accommodate the loans that would be used to discharge Duncan's indebtedness. *Id*. at 1107. After securing the capital asset, Downing's corporation that had received the funds from Butcher's bank issued two checks to Duncan over the next two years, eventually equaling the amounts Duncan owed Butcher's bank. *Id*. The corporation also paid an interest expense of Duncan's directly to Butcher's bank. *Id*. Duncan would endorse the checks directly to Butcher's bank. *Id*. The first check was for $200,000.00 and the second for roughly $115,000.00. *Id*. Downing's corporation that received the loans never repaid Butcher's bank and the loans were written off by the bank that assumed them after Butcher's bank failed. *Id*.

The indictment in the case charged that Duncan had falsely reported the two transfers from Downing that he eventually endorsed back to Butcher as capital gains transactions, rather than ordinary income. *Id*. Duncan was also charged with reporting an interest expense deduction in the amount that Downing's corporation paid on his behalf to Butcher's bank. *Id*. The government called a number of individuals to testify about the true nature of these transactions.[1] The government's theory of the case was that the transfers from Butcher to Downing to Duncan and eventually back to Butcher were really just fees paid by Butcher for increased control over the Knoxville Federal S&L, and not capital transactions. *Id*. at 1108. There was some evidence offered by government experts that the transfers could be reasonably classified as capital gains but for the fact that the capital asset—the purchase option—was a sham. *Id*.

Duncan, while not testifying, offered some evidence at trial that he relied on Downing, a CPA, for the preparation of his tax returns. According to Duncan, Downing had control over the information relevant to filing Duncan's tax returns. *Id*. at 1115. One of Downing's employees

---

[1] By the time of trial, Butcher—who was originally indicted with Duncan and Downing—was cooperating with the government and testified regarding the scheme. *Id*. at 1107.

even testified that he received all of his information regarding the transaction from Downing when he began preparing Duncan's tax returns. *Id*. Furthermore, the employee testified that Downing's firm was a "bag job" operation, indicating that individuals would appear with a brown bag full of documents that Downing would then need to sort through. *Id*. "Moreover, the Government's own theory cast Downing as the initiator of the Blalock transaction and as in possession of all information relevant to it." *Id*. The Sixth Circuit held that this evidence offered by Duncan, taken in light of the government's theory of the case, warranted the giving of a good faith reliance instruction since there was at least some evidence supporting Duncan's suggestion that he relied on Downing's advice and no evidence to the contrary.

Importantly, the Sixth Circuit held that a good faith instruction will not "be given whenever a defendant asserts that he followed a preparer's advice in good faith, if there is overwhelming evidence to the contrary." *Id*. at 1118. The court cited *United States v. Hoopes*, 545 F.2d 721 (10th Cir. 1976), for the proposition that a defendant cannot receive a good faith reliance instruction if the evidence established the defendant's knowledge of the illegality of his conduct. In *Hoopes*, a dentist from Salt Lake City filed a number of tax returns under protest after "discuss[ing] those matters with many people and accumulat[ing] and read[ing] a mass of literature on the subjects [of United States fiscal and tax policy]." *Id*. at 721-22.[2] Importantly for

---

[2] A more comprehensive quotation from the record in *Hoopes* is a helpful supplement:

> A fair analysis of the evidence is that Hoopes, after years of concern, agitation, and study of the federal income tax laws and other governmental fiscal activities, decided on his own the course of action he would take, as he in effect testified, to bring the matter to a head. His conduct was an open defiance of the law and his claim that he acted in good faith upon advice of attorneys was obviously an afterthought.

> For a number of years Hoopes had been a practicing dentist in Salt Lake City, Utah, with substantial yearly income. During those years he had become disenchanted with the fiscal policies of the United States and was very critical of the income tax law and procedures of the Internal Revenue Service. He discussed those matters with many people and accumulated and read a mass of literature on the subjects. For the years 1968, 1969, and 1970 he filed Form 1040 income tax returns with the assistance of an accountant and paid the taxes due under protest. No civil litigation resulted from those protests. For the year 1971 Hoopes adopted a new course of action

this case, the Tenth Circuit held that "Hoopes knew, as do millions of other American citizens, that the law required him to file income tax returns. The law books are replete with criminal cases involving the willful failure to file federal income tax returns." *Id*. at 723.

*Hoopes* involved a dentist from Salt Lake City, Utah who filed his 1040 form returns under protest in 1971 and 1972. *Id*. at 722. In those years he submitted his form to the IRS but wrote a message of protest across the form, rather than compiling it. *Id*. Hoopes reason for this

---

by filing a 1040 income tax form containing only his name and address. Across the form was written, "UNDER PROTEST I PLEAD THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION; ALSO ARTICLE I-SEC. 8, 10, THE FIRST, FOURTH, SEVENTH, TENTH AND FOURTEENTH AMENDMENTS TO SAME." The identical procedure was followed in 1972 when a 1040 form was filed, with some variation in the writing across the face of the form. Regarding his reason for filing the 1040 form without any information concerning his income, Hoopes testified:

> I simply wanted to register a protest and get the Internal Revenue Service to face me in civil litigation whereby we could resolve some type of a disagreement. I felt they were transgressing upon the citizens' rights.

A special agent of the Internal Revenue Service interviewed Hoopes with reference to his 1971 return. The result of the interview was mostly a dissertation by Hoopes on his constitutional rights and ideological beliefs. He refused to allow the agent access to his records for the purpose of determining his income, stating that the refusal was the result of his belief that under the Constitution he was not required to divulge that information. During the interview Hoopes did not claim that he was relying on the advice of an attorney when he filed the 1971 income tax return in blank. The Internal Revenue Service determined the income by other means and it is not contended that tax returns were not due for the years 1971 and 1972.

With reference to his consultation with attorneys on his tax matters, Hoopes testified that he discussed the matter with three lawyers, Robert Matheson of Salt Lake City, Utah, and William Drexler and Jerome Daly, both of Minnesota. Of these, only Mr. Matheson was a practicing attorney. He advised Hoopes that his plan of action "was a precarious course to follow . . . because there were many cases operating against that." Hoopes said he attended three lectures given by Drexler in 1972, 1973, and 1974 on the subject of the federal income tax. In addition to listening to the lectures, Hoopes discussed the tax matter with him on several occasions. At least two of these meetings were after Hoopes had decided on his course of action. Apparently Drexler advised him that his course of action was "proper." As to Jerome Daly, Hoopes attended one lecture given by him in May of 1972 in which Daly discussed a court case he had won in Minnesota concerning the value of the dollar. Hoopes did not recall that Daly had mentioned income tax.

Over the years Hoopes had accumulated a mass of literature, court decisions, and other material which he thought supported his ideologies. He introduced in evidence 490 pages of that printed material, most of which was irrelevant to the issues of the case. It did, however, contain publications which disclosed that Drexler and Daly were tax protestors who had been disbarred from the practice of law in Minnesota. Each had been prosecuted for the same offense for which Hoopes was being tried. Drexler was acquitted, and Daly was convicted and his conviction affirmed. United States v. Daly, 481 F.2d 28 (8th Cir.), cert. denied, 414 U.S. 1064, 38 L. Ed. 2d 469, 94 S. Ct. 571 (1973). In concluding his testimony, Hoopes stated that he now recognized that he might have made a "serious mistake" in following the course he did. *Id*. at 721-22.

course of action was that he "wanted to register a protest and get the Internal Revenue Service to face me in civil litigation whereby we could resolve some type of a disagreement." *Id*. Eventually, the IRS conducted an interview with Hoopes but was unable to obtain any documentation regarding his income. *Id*. Hoopes was eventually prosecuted for failing to file income tax returns for 1971 and 1972. *Id*. at 721.

*Hoopes* illustrates the type of evidence necessary to negate evidence of good faith reliance on a third party. In *Hoopes*, the defendant was well versed in the tax code and had spent years studying all manner of subjects relating to the income tax. At trial, Hoopes also testified that he had consulted with three different attorneys regarding his desire to protest. *Id*. at 722. One of these attorneys, the only one licensed to practice law, "advised Hoopes that his plan of action 'was a precarious course to follow . . . because there were many cases operating against that.'" Id. The other two attorneys who had been disbarred were shown to also be tax protesters who had been charged with the same offense as Hoopes. *Id*. at 723. One of these attorneys "advised him that his course of action was 'proper.'" *Id*. Hoopes also "had accumulated a mass of literature, court decisions, and other material which he thought supported his ideologies." *Id*.

The Tenth Circuit affirmed the district court's decision denying Hoopes a good faith reliance on legal counsel instruction. The Tenth Circuit cited language from *Williamson v. United States*, 207 U.S. 425, 453 (1908), explaining that "no man can willfully and knowingly violate the law, and excuse himself from the consequences thereof by pleading that he followed the advice of counsel." If the evidence Rae develops during trial reflects that he is more akin to Hoopes—an individual who understands his responsibilities and obligations under the code— than to Duncan—an individual more exclusively reliant on his accountant for his expertise—he

will not be entitled to a good faith reliance instruction. Until such time as that evidence is developed, it is premature for the Court to decide the question.

Accordingly, Rae's motion for a good-faith jury instruction with respect to Count 1 will be denied with prejudice. His motion seeking a good-faith reliance on the advice of a third-party jury instruction with respect to Count 1 will be denied without prejudice to his ability to request such an instruction at trial.

**B.**

The next count against Rae is the mail fraud charge under 18 U.S.C. § 1341. A Court is required to give a properly constructed "good faith" instruction if "specific intent is an element of the crime," *United States v. Svoboda*, 633 F.3d 479, 483 (6th Cir. 2011), and if the defendant's theory of the case—upon which the instruction is premised—"has some support in the evidence and the law." *United States v. Triana*, 468 F.3d 308, 315 (6th Cir. 2006). The Sixth Circuit discussed the applicability of the law regarding good faith instructions to a count of mail fraud in *United States v. Wall*. 130 F.3d 739 (6th Cir. 1997). It noted that mail fraud is a specific intent crime and so good faith is a complete defense to the charge. *Id*. at 746. It held, however, that where the Defendant's theory of the case is that he did not commit the *actus reus* of the crime, as opposed to not possessing the requisite *mens rea*, a good faith instruction is not warranted. *Id*. at 747. "Such a defense is not a good-faith defense, but rather a 'plea of not guilty.'" *Id*.3

Thus, to the extent that Rae intends to offer evidence that his actions were lawful under the statute, a good faith instruction would not be warranted. His testimony on those counts may be necessary to his defense but, absent proofs that the statute is misleading, he would still not be deserving of a good faith instruction. By contrast, if Rae makes a claim to reasonably misunderstanding his obligations under the statute, a good faith instruction may be warranted.

The most instructive case on this point is *United States v. Curry*, 681 F.2d 406 (5th Cir. 1982) decided by the Fifth Circuit. The case involved a request for a good faith instruction by a defendant charged with mail fraud. The Fifth Circuit held that it was error for the district court to not provide the jury with an instruction about the defendant's good faith, but only because it found there was sufficient evidence that the statute at issue was ambiguous.

In *Curry*, the defendant chaired a "political action committee of an organization incorporated under Louisiana law as P.E.O.P.L.E., Inc." United States v. Curry, 681 F.2d 406, 408 (5th Cir. 1982). The organization known as P.E.O.P.L.E. originally "was a group of black citizens in the South Baton Rouge area who performed various social, civil, charitable and political functions." *Id*. This group formed a PAC "ostensibly for the purpose of supporting political candidates chosen by the organization." *Id*. at 408-09. In reality, "candidates paid P.E.O.P.L.E. large amounts for its official endorsement, and for providing an array of campaign assistance services such as distributing signs and bumper stickers, printing ballots, and calling voters." *Id*. at 409. The PAC was thus dual-purpose. It supported the political goals of P.E.O.P.L.E. and also served "as a fund-raising vehicle for the organization's other programs." *Id*.

Curry chaired the PAC for three elections during 1978 and 1979. The government alleged that he used this position to defraud the organization. Id. During his time as chair he received nearly $24,000.00 on behalf of the PAC, nearly $15,000.00 of which he converted to his own use. *Id*. Candidates would issue checks to Curry that he then deposited in his personal account.

"Louisiana's Election Campaign Finance Disclosure Act . . . requires political committees to report their campaign finances to a Supervisory Committee." *Id*. After each election, Curry would mail affidavits attesting to the PAC's finances to this Supervisory

- 14 -

Committee. *Id*. The government alleged that these affidavits were false and fraudulent and part of Curry's scheme, using the mails, to "conceal from the Committee and from P.E.O.P.L.E.'s membership the true amounts of money received by Curry on P.E.O.P.L.E.'s behalf from political candidates, thereby preventing detection of Curry's scheme to defraud P.E.O.P.L.E. *Id*.

Curry was indicted on charges of mail fraud and the government alleged that one of the fraudulent schemes he perpetrated via the mails was "defraud[ing] the [Louisiana Elections] Supervisory Committee of its right to obtain true and correct financial disclosure reports as required by the [Louisiana] Election Act." *Id*. at 411. Curry claimed that the Election Act's definition of "contribution" was unclear. *Id*. at 416. He also called various candidates as witnesses to testify that they transferred funds to P.E.O.P.L.E., the political action committee Curry chaired, in exchange for certain services. The candidates testified that they believed "they were simply expending funds for necessary services" and classified those transfers as "expenditures" on their campaign finance reports. *Id*. at 417. The government took the position that the "expenditures" were "contributions" under the Election Act. *Id*.

The Fifth Circuit held that the government's "interpretation of the Election Act may well be legally correct. Gordon Curry, however, is not a lawyer. The issue is whether a nonlawyer might reasonably have believed that money received in exchange for services was not a 'contribution.'" *Id*. The Fifth Circuit held that a defendant is entitled to a good faith instruction "if there [is] any evidence at all to support the charge, 'regardless of how weak, inconsistent or dubious the evidence of good faith may have been.'" *Id*. at 416 (quoting *United States v. Goss*, 650 F.2d 1336, 1341 (5th Cir. 1981). Yet, despite this standard, the Fifth Circuit emphasized Curry's preliminary showing that there was reasonable confusion regarding the clarity of the law

at issue. Indeed, the Fifth Circuit stated that "[t]he most obvious evidence supporting a finding of good faith is the ambiguity of Louisiana's Election Act." *Curry*, 681 F.2d at 416.

It was only after noting the extreme confusion engendered by the Election Act that the Fifth Circuit moved on to consideration of other evidence offered by Curry. At that point, the Fifth Circuit emphasized the evidence that other leaders of political committees classified similar transfers as "expenditures" rather than "contributions." *Id*. at 417 (noting affidavits that made similar classification decisions).

Rae's circumstance, by contrast, appears distinguishable. In *Curry*, the court was addressing an ambiguous statute. Indeed, the trial judge felt compelled to remark on the ambiguity of the act to the jury:

> In all candor, ladies and gentlemen, I must tell you that this Louisiana Campaign Finance Disclosure Act is one of the most poorly drafted statutes that in twenty-nine years at the bar I have ever seen. There are many unclear and ambiguous provisions of this statute. Let me hasten to add, however, that you are entirely free to disregard the opinion which I have just stated.

*Id*. at 417 n.29. Here, however, the Court is confronted with a statute that while intricate in its organization, nevertheless is not commonly misunderstood because it is alleged to be ambiguous. *See Hoopes*, 545 F.2d at 722-23 (noting the copious authority that exists regarding the obligation to pay income tax). The Sixth Circuit has adopted the reasoning that, irrespective of the strength of a defendant's good faith convictions, those beliefs "will not justify baseless, false, or reckless representations or promises." *Sparrow v. United States*, 402 F.2d 826, 828 (10th Cir. 1968) (cited approvingly in *United States v. Stull*, 743 F.2d 439, 445-446 (6th Cir. 1984)). The Sixth Circuit's reasoning parallels the Fifth Circuit's rationale in *Curry*. Where a statute is not clearly ambiguous and without clarifying authority a good faith defense is not justified.

In light of this authority, the circumstances justifying a good faith instruction appear very narrow. At this point, as the government suggests, we should await the defendant's proofs to resolve the issue.

## C.

Rae is charged in Count 3 with making false statements under 18 U.S.C. § 1001. As noted above, he argued at the hearing for a good faith and good faith reliance instruction on this count as well. The analysis, however, is the same as above. *See supra* § III.B; *United States v. Stephens-Miller*, No. 13-3315, 2014 WL 4815324 (6th Cir. Sept. 30, 2014) (applying *Pomponio*'s reasoning to 18 U.S.C. § 1001 charges); *United States v. Lindo*, 18 F.3d 353 (6th Cir.1994) (applying *Duncan*'s reasoning to 18 U.S.C. § 1001 charges). As a result, Rae's motion for a good faith instruction as to Count 3 will be denied with prejudice because the jury will receive an adequate instruction on willfulness. His motion for a good faith reliance on an accountant instruction as to Count 3 will also be denied. There is insufficient proof that Rae made a full disclosure of all pertinent facts to his accountant and relied exclusively on his accountant's expertise in making the statements that are alleged to be false. Denial of this claim is without prejudice to Rae's ability to request such an instruction at trial.

## IV.

Accordingly, it is **ORDERED** that Defendant Carter Rae's Motion to Dismiss Counts (ECF No. 30) is **DENIED**.

It is further **ORDERED** that Defendant Carter Rae's Motion for a Good Faith Jury Instruction (ECF No. 29) is **DENIED** with prejudice to his claim for a good faith instruction as to Counts 1 & 3 and without prejudice to his claim for a good faith instruction as to Count 2 and for a good faith reliance instruction as to Counts 1 & 3.

Dated: October 7, 2014                          s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on October 7, 2014.

                                    s/Tracy A. Jacobs
                                    TRACY A. JACOBS